**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

K'VAR TILLMAN,

                              Plaintiff,

           v.

                                                    No. 9:19-CV-1597
TREVOR PHILLIPS, et al.,                            (LEK/CFH)

                              Defendants.


**APPEARANCES:**                        **OF COUNSEL:**

K'VAR TILLMAN
37 N. Brandywine Ave.
Schenectady, New York 12307
Plaintiff pro se

Attorney General for the                 DAVID C. WHITE, ESQ.
State of New York                        Assistant Attorney General
The Capitol
Albany, New York 12224
Attorneys for defendant(s)

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

        Plaintiff pro se K'var Tillman ("plaintiff"), who was at all relevant times in

the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging

that defendants Sergeant ("Sgt.") Trevor Phillips ("Phillips"), Sgt. Timothy Clark

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

("T. Clark"), Sgt. Michael Clark ("M. Clark"), Correction Officer ("C.O.") J.

Sorensen ("Sorensen"), C.O. Danny Putnam[2] ("D. Putnam"), and C.O. John

Putnam[3] ("J. Putnam") (collectively, "defendants") violated his constitutional rights

under the Eighth Amendment; and that defendant Phillips violated his

constitutional rights under the Fourteenth Amendment.  See Dkt. No. 1

("Compl.").  Presently before the Court is defendants' Motion for Summary

Judgment brought pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

56.  See Dkt. No. 26-1.  Plaintiff filed a response.  See Dkt. No. 28.  Defendants

filed a reply.  See Dkt. No. 29.  For the following reasons, it is recommended that

defendants' motion be denied.

## I. Background

On review of defendants' Motion for Summary Judgment, the facts will be related

herein in the light most favorable to plaintiff as the nonmoving party.  See Rattner v.

Netburn, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record . . .  to determine

whether there is a genuine issue as to any material fact, the court is required to resolve

all ambiguities and draw all factual inferences in favor of the party against whom

summary judgment is sought.").

### A. Plaintiff's Factual Assertions[4]

---

[2] The docket reflects defendant's last name as "Putman."  However, the parties' use the spelling "Putnam."  See Dkt. No. 1 ("Compl.") at 3; Dkt. No. 26-1 at 3.  The clerk of court is directed to update the docket to reflect the appropriate spelling of defendant Putnam's last name.

[3] In plaintiff's complaint, he refers to defendant as "John Putman" and "D.J. Putman."  See Compl. at 3, 5. Defendants, however, consistently refer to defendant as "Jonathan Putnam."  See Dkt. No. 26-1 at 3; Dkt. No. 26-2 at 1.  As such, the Court will use defendants' spelling, and the clerk of court is directed to update the docket.

[4] To the extent that plaintiff's exhibits are relevant to the causes of action at issue on the present motion, the Court will consider them as part of the complaint.  See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004)

On January 31, 2019, while plaintiff was housed at Watertown Correctional Facility ("Watertown"), he was assaulted by an unknown assailant.  See Dkt. No. 1-1 at 1.  Thereafter, D. Putnam ordered plaintiff to place his hands on the wall to frisk and check plaintiff for weapons.  See id. at 2; Compl. at 6.  Unprovoked, D. Putnam then punched plaintiff in his right ear, and plaintiff immediately fell to the ground.  See Dkt. No. 1-1 at 2.  While plaintiff was on the ground, defendants repeatedly pepper sprayed, punched, kicked, and choked him.  See Compl. at 5.  Phillips pulled out plaintiff's dread locks and yelled racial slurs.  See id.  The assault lasted for approximately fifteen to twenty minutes.  See Dkt. No. 1-1 at 2.

Following the incident on January 31, 2019, plaintiff was placed in the special housing unit ("SHU")[5] for 270 days and was under contraband watch for twenty-one days.  See Compl. at 2, 6; Dkt. No. 1-1 at 3.  On March 14, 2019, plaintiff was transferred from Watertown to Downstate Correctional Facility ("Downstate").  See Dkt. No. 26-9 at 9.  The same day, plaintiff was in transit from Downstate to Fishkill Correctional Facility ("Fishkill").  See id.  On March 15, 2019, plaintiff was transferred from Fishkill to Upstate Correctional Facility ("Upstate"), where he remained until November 2019.  See id.

In a letter dated March 20, 2019, addressed "To: Grievance[,]" plaintiff states that he "filed a grievance at Watertown Corr. Facility, on approximately 2/19/19, in which [he]

---

("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (internal quotation marks and citations omitted).

[5] SHUs exist in all maximum and certain medium security facilities.  The units "consist of single- or double-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. COMP. CODES R. & REGS. ("7 N.Y.C.R.R.") § 300.2(b).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reason, or in other circumstances as required.  See id. at pt. 301.

ha[s] not received a response or a notice that the grievance was ever received."  Dkt. No. 1-1 at 4.[6]


## II. Legal Standards[7]

### A.  Summary Judgment Standard

Under Fed. R. Civ. P. 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The moving party has the burden of showing the absence of a genuine dispute of material fact by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion.  Celotex, 477 U.S. at 322; see FED. R. CIV. P. 56(c).  A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248, 250; see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "When ruling on a

---

[6] Plaintiff does not provide the Court with copies of other grievances or letters beyond the March 20, 2019, letter.

[7] All unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp. (Motors Holding Div.), 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)).  Furthermore, "mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (brackets omitted) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest.  At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

5

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted).

## A. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion is required even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. See id. at 524. "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated." Cuadrado v. Brueault, No. 9:14-CV-1293 (DNH/CFH), 2015 WL 1606178, at *3 (N.D.N.Y. Apr. 8, 2015); see Jones v. Bock, 549 U.S. 199, 218 (2007). "Courts in [] this Circuit have long recognized [DOCCS' three-step] procedure as an 'available' remedy for purposes of the PLRA."[8]   Hall v. Cnty. of

---

[8] DOCCS has a well-established administrative review process.  See N.Y.C.R.R. § 701.1(a).  First, an inmate must file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within twenty-one

Saratoga, No. 10-CV-1120 (NAM/CFH), 2013 WL 838284, at *1-2 (N.D.N.Y. Mar. 6, 2013).

"Generally, if a plaintiff . . . fails to follow each of the required steps prior to commencing an action, he has failed to exhaust his administrative remedies as required under the PLRA." Sanders v. St. Mary, No. 9:19-CV-1314 (BKS/TWD), 2021 WL 1575944, at *4 (N.D.N.Y. Apr. 22, 2021), report and recommendation adopted, 2021 WL 1999781 (N.D.N.Y. May 19, 2021); see also Ruggiero v. Cnty. of Orange, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).") (quotation marks and citations omitted).

Although the Supreme Court of the United States has deemed exhaustion mandatory, the Second Circuit recognizes certain caveats. See Ruggiero, 467 F.3d at 175 (2d Cir. 2006). In 2016, the Supreme Court made clear that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, 578 U.S. 632, 648 (2016). The Supreme Court determined that the PLRA's "exhaustion requirement hinges on the 'availab[ility]' of administrative remedies[.]" Id. at 642. "'[A]vailability' means 'an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of.'" Santos v. Schroeder, No. 9:19-CV-1610

---

calendar days of the alleged incident. See id. § 701.5(a). Second, an inmate may appeal IGRC's decision to the facility's Superintendent. See id. § 701.5(c)(1). Third, an inmate may appeal the Superintendent's decision to the Central Office Review Committee ("CORC"). See id. § 701.5(d)(1)(i). "There is also an expedited procedure for complaints raising bona fide issues of harassment or other misconduct by DOCCS staff, which bypasses the IGRC, and initially refers the grievance to the facility superintendent or his designee for prompt review, investigation, and decision." Ferguson v. Mason, No. 9:19-CV-927 (GLS/ATB), 2021 WL 862070, at *2 (N.D.N.Y. Jan. 7, 2021), report and recommendation adopted, 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021) (citing 7 N.Y.C.R.R. § 701.8).

(LEK/TWD), 2021 WL 931959, at *5 (N.D.N.Y. Feb. 1, 2021), report and recommendation adopted, 2021 WL 930709 (N.D.N.Y. Mar. 11, 2021) (quoting Ross, 578 U.S. at 642) (quotations and internal citations omitted).

There are "three circumstances where administrative remedies may be unavailable to a prisoner." Wilson v. Snyder, No. 9:19-CV-420 (DNH/CFH), 2019 WL 8192227, at *4 (N.D.N.Y. Dec. 5, 2019), report and recommendation adopted, 2020 WL 1140666 (N.D.N.Y. Mar. 9, 2020).  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Ross, 578 U.S. at 643 (citing Booth v. Churner, 532 U.S. 731, 736 (2001)).  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id.  Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Id. at 644.

### III. Arguments

#### A.  Defendants' Arguments

Defendants contend that plaintiff's complaint should be dismissed in its entirety for failure to exhaust administrative remedies because he did not file a grievance, despite the availability of the grievance procedure.  See Dkt. No. 26-1.

Defendants submit declarations from the Inmate Grievance Program ("IGP") supervisors at Watertown, Downstate, Fishkill, and Upstate, who all contend that

8

plaintiff did not file any grievances or submit any written requests for an extension of

time to file a grievance concerning the alleged January 31, 2019, incident.  See Dkt. No.

26-4 at 4, ¶ 14; Dkt. No. 26-6 at 3, ¶¶12-13; Dkt. No. 26-7 at 3, ¶¶12-13; Dkt. No. 26-8

at 3, ¶¶12-13; Dkt. No. 26-9 at 5, ¶¶19-20.  Johnson, the IGP Supervisor at Watertown,

declares that the grievance office never received any letters from plaintiff related to the

alleged assault.  See Dkt. No. 26-9 at 5, ¶ 23.  A search of the Central Office Review

Committee ("CORC") records revealed no appeals related to the January 31, 2019,

incident.  See Dkt. No. 26-5 at 4.

### B. Plaintiff's Arguments

In response to defendants' motion for summary judgment, plaintiff states, "I

admit that I have exhausted my remedies as far as the process goes."  Dkt. No. 28 at 1.

Plaintiff does not contend that he filed a request for an extension of time to file a

grievance at Watertown.  See generally Compl.; Dkt. No. 28.  Plaintiff testified that he

appealed to the CORC "[a]bout the grievance that [he] filed in February pertaining to the

incident that happened in Watertown" and was "still waiting right now for a response to

that."  Dkt. No. 26-2 at 95, 99.  However, plaintiff does not allege in his complaint or

response that he filed an appeal, nor provide any details as to how, when, or at what

facility he wrote to the CORC.  See generally Compl.; Dkt. No. 28.  Rather, plaintiff

explains why he was unable to use the grievance process.  See Dkt. 1-1 at 3-4; Dkt. No.

28 at 1-2.  Plaintiff contends that: (1) he was prohibited from having any writing utensils

while under the twenty-one day contraband watch at Watertown; (2) the day he was

released from contraband watch, he submitted a grievance, but the officer he gave it to

did not file it; (3) he was not permitted access to "writing utensils" while in transit from

9

Watertown to Upstate because "no one is allowed access to the grievance program during transit to S.H.U."; and (4) he wrote "To: Grievance" at Upstate inquiring about the lack of response from Watertown immediately upon his arrival at Upstate.  Dkt. No. 28 at 1-2; Dkt. No. 1-1 at 4.  Therefore, it appears that plaintiff's current argument is that administrative remedies were unavailable.

## IV. Discussion

### A.  Availability of Administrative Remedies

Whether a plaintiff exhausted his administrative remedies is a legal question that requires a defendant to produce reliable evidence of availability.  See Coleman v. Nolan, No. 9:15-CV-40 (ATB), 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018).  "[O]nce a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable."  Id. (citing Smith v. Kelly, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013)).  As such, "'the burden of production' may shift to a plaintiff when a court considers whether the grievance process was unavailable[.]"  Id.  (citations omitted).

Williams v. Correction Officer Priatno provides that administrative remedies are unavailable to a plaintiff where a grievance is "unfiled and unanswered" because "the process to appeal . . . is prohibitively opaque, such that no inmate could actually make use of it."  829 F.3d 118, 126 (2d Cir. 2016).  In Williams, the plaintiff was housed in the SHU and "gave [his] grievance to a correction officer to forward to the grievance office

on his behalf, in accordance with DOCCS grievance procedures that apply to inmates in the SHU." [9] Id. at 120-21.  The Court found that "in giving his grievance to the correction officer, Williams exhausted all administrative remedies that were available to him." Id. at 126.  "That *Williams* was decided on a motion to dismiss and not on a summary judgment motion does not change the analysis."  Medina v. Napoli, 725 F. App'x 51, 54 (2d Cir. 2018) (summary order) (reversing grant of summary judgment and remanding to the district court to apply Williams).

In Williams, "[t]he plaintiff supported [his] allegation [of unavailability] by providing the court with the date he filed the grievance, the procedure for how he filed it, and the timeline for roughly when [] subsequent follow-up conversations occurred."  Ozzborn v. Cornell, No. 9:17-CV-1039 (MAD/ATB), 2021 WL 2227829, at *4 (N.D.N.Y. June 2, 2021) (citing Williams, 829 F.3d at 121).  In applying Williams, this Court has held that it is sufficient for a plaintiff to "submit[] a sworn statement that he gave his grievance to a correction officer," and the plaintiff is "not then required to produce a greater amount of evidence than normally required of a non-movant at the summary judgment stage." Hudson v. Kirkey, No. 9:20-CV-0581 (LEK/DJS), 2021 WL 1966721, at *4 (N.D.N.Y. May 17, 2021) (citing McLean v. LaClair, No. 9:19-CV-1227, (LEK/ATB) 2021 WL 671650, at *8 (N.D.N.Y. Feb. 22, 2021)).

---

[9] 7 N.Y.C.R.R. 701.7(b) requires that SHU inmates "use centrally located IGP deposit boxes to send grievance forms" and that IGP staff shall collect the contents from these boxes "at least two times per week."  7 N.Y.C.R.R. 701.7(c)(1) further requires that "[a]n IGRC staff member (sergeant, officer) or grievance supervisor shall make rounds of all special housing areas at a reasonable time at least once a week to allow inmates direct access to the program."  Plaintiff testified that because he was locked in his cell, an officer collected his grievance and placed it in the necessary box.  See Dkt. No. 26-2 at 91; see also Rodriguez v. Cross, No. 9:15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017), report and recommendation adopted, 2017 WL 2790530 (N.D.N.Y. June 27, 2017) (acknowledging that inmates in the SHU are in a different position than other inmates regarding availability of administrative remedies).

This Court has also denied summary judgment where a plaintiff "does not have a copy of the grievance, was not confined in the SHU, and has not submitted any contemporaneous correspondence inquiring about the status of his grievance," but submitted a sworn response and testified under oath that he submitted a handwritten grievance and that he verbally followed up with the grievance office. Maldonado v. Mandalaywala, No. 9:17-CV-1303 (BKS/TWD), 2020 WL 1159426, at *17 (N.D.N.Y. Feb. 12, 2020), report and recommendation adopted, 2020 WL 1157643 (N.D.N.Y. Mar. 10, 2020); see also Martinaj v. Uhler, No. 9:18-CV-00257 (BKS/DJS), 2021 WL 3793769, at *12 (N.D.N.Y. Aug. 26, 2021) (denying summary judgment where the plaintiff wrote a follow-up letter inquiring about his grievance and submitted a copy of the letter to the Court, corroborating his sworn declaration).

Further, this Court has denied summary judgment where the plaintiff testified that he wrote two grievances, handed one to a grievance officer while housed in the general population, and another to a prison guard while housed in the SHU, but "he made no attempt to follow up or otherwise appeal to the superintendent." Britt v. Carberry, No. 9:17-CV-0234 (MAD/DEP), 2019 WL 3365766, at *10 (N.D.N.Y. Mar. 22, 2019), report and recommendation adopted, 2019 WL 2437912 (N.D.N.Y. June 11, 2019); see also Braxton v. Bruen, No. 9:17-CV-1346 (BKS/ML), 2020 WL 5752333, at *7 (N.D.N.Y. Aug. 24, 2020), report and recommendation adopted, 2020 WL 5751172 (N.D.N.Y. Sept. 25, 2020) (denying summary judgment where the plaintiff "provided extensive deposition testimony regarding his efforts to file grievances and appeals and proffered copies of his grievances, appeals, and letters.").

By contrast, this Court has granted a defendant's motion for summary judgment where the plaintiff testified during a "deposition that he filed a grievance by leaving a plain envelope addressed to the grievance committee for the mail personnel to collect," but did not submit documentary evidence to support the contention and did not verbally follow up with anyone at the prison about the grievance. Ozzborn, 2021 WL 2227829, at *4-5. In addition, this Court has found a plaintiff's exhaustion claim insufficient where the plaintiff "provided no evidence that he actually did write grievances; when they were written; the content of the grievances . . . the officers named in the grievance(s) . . .; the specific steps taken by Plaintiff to provide them to an officer to send to the grievance office; and any specific follow up with the grievance office[.]" Sankara v. Montgomery, No. 9:16-CV-00885 (FJS/TWD), 2018 WL 4610686, at *8 (N.D.N.Y. June 25, 2018), report and recommendation adopted, 2018 WL 3408135 (N.D.N.Y. July 13, 2018). This Court has noted that "[i]nmates not housed in the SHU are in a different position to SHU inmates when determining if grievance procedures are 'essentially unknowable' or unavailable." Rodriguez v. Cross, No. 9:15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017), report and recommendation adopted, 2017 WL 2790530 (N.D.N.Y. June 27, 2017) (citation omitted) (granting summary judgment to a plaintiff housed in the general population who did not follow up on his grievance and filed a different grievance at the facility a week later); see also Coleman, 2018 WL 4732778, at *12 ("[A]n inmate depends on correction officers to forward a grievance" while housed in the SHU).

In determining the availability of administrative remedies, courts have also looked to whether and when a plaintiff was transferred from the correctional facility where the

grievance at issue was allegedly unfiled.  In <u>Williams</u>, the plaintiff was transferred two weeks after attempting to file his grievance.  <u>See</u> 829 F.3d at 121.  The Second Circuit explained that such a transfer compounded the issue of availability where "[t]he regulations plainly do not provide guidance on how a transferred inmate can appeal his grievance with the original facility without having received a response."  <u>Id.</u> at 126; <u>compare</u> <u>Ozzborn</u>, 2021 WL 2227829, at *4-5 (explaining that the plaintiff was transferred eight months after attempting to file his grievance and that during those eight months, he did "not assert that he ever followed up on his grievance or offer any explanation as to why he failed to.").

### B.  Availability as to Plaintiff

Here, plaintiff has produced sufficient evidence to raise a question of fact as to whether administrative remedies were available to him.  As plaintiff was housed in the SHU at all relevant times, he had to rely on corrections officers to submit his grievance. <u>See</u> Dkt. No. 1-1 at 3; <u>see</u>, <u>e.g.</u>, <u>Williams</u>, 829 F.3d at 120-21.  Plaintiff testified that after being released from contraband watch, he "put [the grievance] in an envelope, [] sealed it, addressed it to I.D.R.C., [sic] and being that [he was] locked in [his] cell, they have to collect [the] mail and put in in a box."  Dkt. No. 26-2 at 91; <u>compare</u> <u>Sankara</u>, 2018 WL 4610686, at *8 (finding that the plaintiff provided no specifics related to his grievance).  Plaintiff further testified that a few days after attempting to file his grievance, he asked nonparty C.O. Richardson what was going to happen with his grievance, and C.O. Richardson responded, "it's not going to make it."  <u>Id.</u> at 92-93; <u>see</u> <u>Maldonado</u>, 2020 WL 1159426, at *17 (finding an issue of fact as to availability where the plaintiff testified that he "verbally followed up with the Upstate grievance office" but

provided no documentary evidence of the conversation).  Although plaintiff did not testify about who he handed his grievance to, he explained the procedure he followed, and roughly set forth the timeline for when he filed the grievance and held a follow-up conversation, which creates a genuine issue of material fact as to the availability of administrative remedies.  See Ozzborn, 2021 WL 2227829, at *4 (citing Williams, 829 F.3d at 121).

Moreover, plaintiff transferred facilities three weeks after attempting to file a grievance and follow up on its status, contributing to the potential unavailability as " [t]he regulations plainly do not provide guidance on how a transferred inmate can appeal his grievance with the original facility without having received a response." Williams, 829 F.3d 118 at 126; Ozzborn, 2021 WL 22272829, at *4

Plaintiff testified that after arriving at Upstate, he wrote a letter to Upstate seeking a response to the grievance he filed at Watertown.  See Dkt. No. 26-2 at 90.  Plaintiff has supported this testimony by submitting a sworn response and a copy of the letter he wrote to Upstate.  See Dkt. No. 28; Dkt. No. 1-1 at 4; see Martinaj, 2021 WL 3793769, at *12 (finding that the plaintiff's "sworn declaration, which is corroborated by his follow-up letter to the IGP Supervisor at Upstate, raises a material issue of fact as to whether he submitted a grievance while confined at Upstate.").  Considering this Court's responsibility to draw reasonable inferences in plaintiff's favor, along with plaintiff's deposition testimony, sworn response, and corroborating document—the letter written to Upstate—plaintiff has raised a genuine issue of material fact as to the availability of administrative remedies.  See, e.g., Hudson, 2021 WL 1966721, at *4.

### C. Plaintiff's Access to Writing Materials and Timing of Filing

15

In reply, defendants argue that plaintiff's unavailability argument should be disregarded because plaintiff's deposition testimony contradicts his response.  See Dkt. No. 29 at 5-6.  Specifically, defendants argue that plaintiff never testified about lacking access to writing utensils.  See id. at 6.  Further, defendants contend that "plaintiff testified that he filed a grievance on February 19, 2019," but because he was on contraband watch until February 21, 2019, he would have been unable to write the grievance on February 19 if he were denied writing materials.  Id. (citing Dkt. No. 26-2 at 86-88;[10] Dkt. No. 1-1 at 4).  IGP Supervisor Johnson declares that an inmate housed in the SHU at Watertown "ha[s] access to grievance forms, paper, and writing utensils." Dkt. No. 26-9 at 3, ¶ 9.  Further, the IGP Supervisors for Fishkill and Downstate declare that "[p]laintiff had full access to the [] grievance office . . . during the time that he was incarcerated[.]"  Dkt. No. 26-7 at 3, ¶ 10; Dkt. No. 26-8 at 3, ¶ 10.  Citing Louis-Charles v. Barker, defendants also argue that plaintiff had forty-two days between the January 31, 2019, incident and his March 14, 2019, transfer to file a grievance, an extension request, or write to Watertown, and "any argument of unavailability due to transfer should be disregarded as without merit."  Dkt. No. 29 at 8; see No. 9:16-cv-1417 (MAD/CFH), 2018 WL 4299982, a *2 (N.D.N.Y. Sept. 10, 2018).

To the extent defendants argue that plaintiff could have filed his grievance or a request for an extension after being released from contraband watch and prior to his transfer, Williams squarely addressed this issue.  The Court explained,

---

[10] Plaintiff did not testify that he filed a grievance on February 19, 2019, in the portion of the deposition transcript that defendants cite.  See Dkt. No. 26-2 at 86-88.  Defendants' counsel asked plaintiff if he "had sent a grievance on February 19th, 2019[,]" to which plaintiff initially responded, "Yes."  Id. at 89.  Plaintiff later clarified, "[s]o, when I got off of watch and on the 21st of February '19, I wrote the letter and sent it out the next day."  Id.

> the window to request an extension between 21 and 45 days of the
> incident will occur only where the inmate took less than the allowed 21
> days to submit his original complaint. If the inmate took full advantage of
> the time the regulations give him to act and then had to wait 25 days for a
> response, 46 days will have passed before he learns with certainty that
> the superintendent failed to respond.

Williams, 829 F.3d at 125.  As noted, plaintiff was under contraband watch for twenty-

one days.  See Dkt. No. 28 at 1.[11]  Assuming for the sake of argument that plaintiff

wrote his grievance the same day he was taken off of contraband watch, i.e., at the end

of the twenty-first day, and waited twenty-five days for the Superintendent's response,[12]

he would have missed the window to seek an extension.  See Williams, 829 F.3d at

125; see also 7 N.Y.C.R.R. §§ 701.5(a)(1), 701.8(g).  Further, even where 7 N.Y.C.R.R.

§ 701.8(g) allows for an inmate to appeal if "the superintendent fails to respond within

the required 25 calendar day time limit[,]" this assumes that the grievance was filed.

Williams, 829 F.3d at 124 ("[I]f the grievance had never been filed, the superintendent

would never have received it and the timeline for [the superintendent] to provide a

response . . . would never have been triggered. . . .  In turn, the textual provision

allowing a grievant to appeal to the CORC would never have come into effect.") (citing 7

N.Y.C.R.R. § 701.8(f), (g)).  Therefore, because the regulations do not provide "a

mechanism for appealing a grievance that was never filed," plaintiff could not have

"actually ma[d]e use of" the grievance process.  Id. at 126.

---

[11] Defendants do not address the length of plaintiff's contraband watch.  Rather, they state that he was placed on contraband watch on January 31, 2019, and reference the twenty-one days only when reiterating plaintiff's contentions.  See Dkt. No. 29 at 5, n.1, 7.

[12] "Grievances claiming employee harassment, including claims of excessive force, are of particular concern to the administration of [DOCCS] facilities, and subject to an expedited procedure whereby the grievance goes directly to the facility superintendent."  Miller v. Ott, No. 9:20-CV-00666 (DNH/CFH), 2021 WL 3812621, at *4 (N.D.N.Y. Aug. 5, 2021), report and recommendation adopted, 2021 WL 3793051 (N.D.N.Y. Aug. 26, 2021) (quotation marks and citations omitted).  "Within 25 calendar days of receipt of the grievance, the superintendent will render a decision on the grievance and transmit said decision, with reasons stated to the grievant[.]"  7 N.Y.C.R.R. § 701.8(f)

As to the availability of writing materials while plaintiff was on contraband watch and during his transfers, "[w]hen a plaintiff[] asserts that a defendant[] withheld pens, courts have granted summary judgment against a plaintiff when the record does not show that [p]laintiff indicated to prison officials that he needed a pen [to] file a grievance or that prison officials refused to provide [one] for this purpose." Rodriguez, 2017 WL 2791063, at *5 (citation and internal quotation marks omitted).  Courts also examine "whether the inmate was drafting other documents during the same time period, or whether they were able to access materials from other sources." Id.  Here, plaintiff does not explain whether, when, or from whom he requested writing materials. See generally Dkt. No. 28.  Instead, plaintiff summarily states that, while on contraband watch, he "was prohibited from obtaining any kind of clothes, mat[t]resss, or writing uten[s]ils" and during transport, he was "not permitted any kind of writing utensils." Dkt. No. 28 at 1-2. However, the record does not show that plaintiff filed any grievances, wrote any letters, or had access to writing materials from another source while under contraband watch or during his transport to other facilities. C.f. Rodriguez, 2017 WL 2791063, at *5 (granting summary judgment where the plaintiff filed numerous other grievances in the same year and only asserted a denial of paper and pen on one occasion); Mena v. City of New York, No. 12-CV-6838 (GBD/AJP), 2013 WL 1352081, at *8 (S.D.N.Y. Apr. 4, 2013), report and recommendation adopted, 2013 WL 3580057 (S.D.N.Y. July 10, 2013) (finding the plaintiff's contention that the defendants "totally deprived [him] of a writing implement[,]" "implausible[,]" because he wrote other documents and grievances during the relevant time period).

18

Additionally, defendants' reliance on <u>Louis-Charles</u> is misplaced.  There, the plaintiff claimed that he was denied access to writing materials but submitted a written grievance and drafted letters during the same time frame.  <u>See Louis-Charles</u>, 2018 WL 4299982, at *2.  As such, the Court "found Plaintiff's allegation did not establish a genuine dispute of material fact because the testimony was both internally inconsistent and not supported by any evidence."  <u>Id.</u>  The plaintiff also did not reach out to shift supervisors to inquire about his grievance.  <u>See id.</u>  The Court found that "[p]laintiff's decision to abandon alternative available avenues for relief was not the result of Defendants thwarting his access to the grievance process[.]"  <u>Id.</u>  Conversely, here, plaintiff contacted a corrections officer to inquire about his grievance and later wrote to Upstate asking about the status of the grievance.  <u>See</u> Dkt. No. 26-2 at 92; Dkt. No. 1-1 at 4.

As to internal inconsistencies, the precise date plaintiff allegedly attempted to file his grievance is unclear.  In the letter plaintiff wrote to Upstate, he explained that he wrote his Watertown grievance "on approximately 2/19/19[.]"  Dkt. No. 1-1 at 4.  In his deposition, plaintiff testified, "I filed it February 22nd. . . . So, when I got off of watch and on the 21st of February '19, I wrote the letter and sent it out the next day."  Dkt. No. 26-2 at 89.  In his response, plaintiff wrote that "[f]rom 2/21/19 [to] 3/14/19, I did not receive a response to my grievance[,]" implying that he attempted to file it on February 21, 2019, or sooner.  Dkt. No. 28 at 2.  Finally, in his complaint, plaintiff stated that he was taken off of contraband watch on "2/23/19 . . . and [he] immediately filed a grievance[.]"  Compl. at 2.  Therefore, even though plaintiff is inconsistent with the date he was

released from contraband watch, plaintiff's contention that he wrote the grievance immediately after being released is not. <u>See</u> Compl. at 2; Dkt. No. 26-2 at 89.

Where a defendant correctly notes that a plaintiff's versions of events are not completely consistent, "this Court, at the summary judgment stage, will not weigh in on the factual dispute or make credibility determinations regarding Plaintiff's sometimes conflicting testimony." <u>Thompson v. Booth</u>, No. 16-CV-03477 (PMH), 2021 WL 918708, at *9 (S.D.N.Y. Mar. 10, 2021). Therefore, as "the exhaustion determination hinges on the question of plaintiff's credibility . . . summary judgment is not warranted on the issue of exhaustion." <u>Bishop v. Presser</u>, No. 9:16-CV-1329 (MAD/ATB), 2018 WL 7917915, at *5 (N.D.N.Y. Dec. 28, 2018), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 2019 WL 442154 (N.D.N.Y. Feb. 5, 2019) (finding that the exhaustion issue hinged on the plaintiff's credibility where the "plaintiff [] consistently alleged that he filed a grievance[,]" [he] "provided documentary evidence to support that claim[,]" he was required to rely on SHU officers, and he was "subsequent[ly] transfer[red] to another facility[.]").

The record, when viewed in the light most favorable to plaintiff, suggests that his grievance may have been unfiled and unanswered. As such, it is recommended that the Court deny defendants' Motion for Summary Judgment and "hold a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence the parties present" to determine whether plaintiff exhausted his administrative remedies or if the administrative remedies were unavailable. <u>Hudson</u>, 2021 WL 1966721, at *4.

## V. Conclusion

**WHEREFORE**, for the reasons set forth above, it is hereby:

**RECOMMENDED**, that defendants' Motion for Summary Judgment (Dkt. No. 26) be **DENIED**; and it is further

**RECOMMENDED**, that the Court hold an exhaustion hearing; and it is

**ORDERED**, that the Clerk of Court update the docket to reflect the appropriate spelling of defendants' names: Danny Putnam and Jonathan Putnam; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[13]

Dated: November 10, 2021
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[13] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).